The case of the afternoon here, the last case of the day, United States v. Minkkinen. We'll hear from the appellant's counsel. May it please the court, Jenny Harreld for the United States. The district court in this case erred in finding that the defendants had satisfied the high burden of proving actual prejudice resulting from alleged pre-indictment delay. The defendants failed to demonstrate that the two deceased witnesses would have been available or even willing to testify. They failed to prove anything about the actual contents of the documents that were purged by the state or that such documents would have been available at an earlier date during the investigation. And critically, they failed to address at all whether the evidence was available through other means, and the evidence being the particular issues that those documents would have gone to. So the alleged due process violation fails at the outset because they failed to meet that initial standard of actual prejudice. What is our review here? The review, Your Honor, is de novo. It is the ultimate questions or questions of law. And this court in both Sheely and Villa has indicated that this context, pre-indictment delay due process review, is a legal question reviewed de novo. Is it that clear in our case law that it's just de novo? It seems that we've got cases kind of all over the place, ultimately, the conclusion of whether this is de novo. I think Sheely is the most clear, Your Honor. In reviewing it, it simply says de novo. It doesn't even mention clear error. I believe clear error would clearly apply to factual findings of the district court. In other circuits, there are other circuits that review this for abuse of discretion. But then ultimately that becomes a de novo review of legal conclusions and a clear error review of the facts. And so we end up at the same place either way, even under that sort of review, because it is an abuse of discretion to make an error of law. And the conclusion, ultimately, that there is a due process violation is a legal question. And if you only have two prongs, and if each of those prongs is satisfied, you have a due process violation. Those two questions also must be de novo review legal questions, because otherwise you could never do a de novo review of the ultimate question of a Fifth Amendment violation. Well, I ask that because, I mean, we've got cases here that say it's mixed questions one way or the other. And it seems to be very critical in terms of when Judge Berger made this determination is how do we review this? Do we review it for clear error, the ultimate determination of whether the facts that lead up to it constitutes a delay? And we've got cases kind of, I think, somewhat overboard. Typically, it's not in the posture of this case. It's usually in a posture where the government's on the other side of the case. And the court has held a particular way, and we get there, and we say, well, we're going to give deference to the trial judge in terms of the conclusion. He knows the whole bit, and go there. And now we have the flip instance, and you say it's just clearly de novo. And that seems to be the dividing line here to some extent, but that is a critical question. Is it de novo or is it for clear error, which in that instance we give Judge Berger quite a bit of deference in terms of how she does this. That's correct, Your Honor, in terms of it is a significant difference. And I think there is a great deal of deference given to her factual findings, the conclusions she makes as to the findings, including the, I think, her conclusions as to whether this evidence was potentially exculpatory. I think that's a question of fact. So it is literally the two questions of did this constitute actual and substantial prejudice, and did this constitute under the balancing test, did it violate the community's sense of justice and fair play. Those two questions are de novo review. Everything else, I believe, is clear error. What about, oh, go ahead. Just one follow-up on it. I just want to be clear. The reason I say it's muddled is because even Sheila, if I recall, it dealt with the ultimate question and not just the prejudice that deals with the case. The ultimate question is de novo, but prejudice and determination by the court, there are cases that indicate that we just basically defer to the trial judge to some extent for clear error, or as you say, maybe abuse of discretion. That seems to be the conundrum. I'm not sure that it's as settled as it should be. I might have a direction in terms of where it should go, but I'm not sure it's as settled here. There are circuits, as you say, that go different ways on it. So that's a critical point, I think, in this case. Yes, Your Honor, and that's why I had the very first section of my reply brief that dealt with that. But I do believe that in terms of the question of actual prejudice, if you look at the way courts have reviewed that, because traditionally that's where this gets decided, is the actual, whether there was actual abuse, and courts are sometimes reversed on that. And when that happens, that is clearly going to be a de novo review, because I think it's very, it would be, I don't want to concede my argument, but I think proving that a finding of actual prejudice is clearly erroneous would be a difficult standard. What about missing factual findings? So like, here, the district court found that the two witnesses, their testimony would have been important. She said very, you know, highly probative. But I didn't ever see the district court address at all whether this information would have been available from other sources, which seems like a really important fact. We've said that in cases, that that's a very important fact for determining whether there's actual substantial prejudice. What do we do with, is that just, you're saying, I guess, if there's missing factual findings that would have supported this conclusion, we can review that de novo? Or how does that factor into our analysis here? If there are factual findings that would have been necessary to make this conclusion that seem to be absent. I think it might depend, Your Honor. When there are absolutely no factual findings about that, I believe since it is a de novo review and there's nothing to defer to, because the court failed to address it at all, I think the court here can look to the facts. This was also, there was no hearing, so there's no question of credibility. It's entirely based on documents. And opposing counsel was correct. This court cannot, even with purely documentary evidence, this court can't impose its judgment. So if the district court didn't address it because the defendants didn't have any evidence that it was available from other sources, then we can address that ourselves. I believe so, Your Honor, because the burden is on the defense. And you don't get a second bite of the apple because it's been remanded to add things to prove that you completely left out. And if you look at their briefing, there is no concrete evidence that this evidence could not have been found by alternative means. The United States, in briefing, pointed out a number of different alternatives. And I think the court and defendants incorrectly tried to shift the burden to the United States. That essentially the United States had to prove that these documents would have been available. But that is not the burden. The burden is that it would not have been available. But the burden is on the defense to say these documents would have been available to us earlier, but they aren't now. And they failed to introduce any evidence to prove that. The evidence that was introduced gives us vague time frames of when states' time limits for purging documents would have taken place. But that doesn't meet the standard of actual prejudice. You're still dealing with that being purely speculation. And the court should be clear. Well, to follow up on Judge Rushen's question and factual findings and what might be missing, I mean, you really can find some serious holes here or things there. And the so-called second-bited apple really would be you, because then you get to go back and have another shot at it. But if there are missing findings of fact that the trial court should have before us, shouldn't we just remand for the trial court to consider to make those findings? I think that is an option, Your Honor. This is one where I think that— Who bears the burden? The defense, Your Honor. And if they don't put on evidence, then why would it go back for them to put on evidence now? Your Honor, I— Because I'm just not sure I understand. You say, well, we should send it back for them to put on evidence that they didn't put on before? Your Honor, I don't believe that that would be—and that's what I meant by second bite at the apple.  If it wasn't in the briefing. In the government's case, we had proffer from the assistant United States attorney. See, the problem is that you are—the district court ruled against you, and we don't know what this record was because the district court didn't make that finding that, well, didn't meet your burden. You didn't present this evidence, so we don't know that. That's why you send it back if you want to know that. I mean, we, of course, can further through ourselves and sort of, well, is it there or not? But typically, we let the district court do that sort of thing. But the point being whether the burden is there is the trial court just didn't make the finding. You could have met it if you go back and look through the record or you consider there. The so-called second bite at the apple, I don't know, do you get to put on more or not? That's something the district court can deal with. That's not something we do, and we're not here to try to keep cases from being thoroughly presented. We're not trying to just always dismiss something because of procedural violation. And when we do, as I said, because these cases typically—you're on the other side of this. We need to do it in all these cases. We need to be just as strict in those cases as we are here and not go back and forth about will the trial judge do what he was doing when it said prejudice and that's the end of it because we're going to give a little deference or whatever. But then get here and it says it's de novo. So that's—the reason you want to go back would be to allow the trial judge, maybe that record does have that. Maybe it is there to go through it. I agree, Your Honor, that if this went back, it would be to make additional findings. But it's the position of the United States that the record is clear that the district court didn't make certain factual findings, specifically that there was no alternative evidence because the court was not presented with any evidence by the defense as to that question. Could she have been clearer, and should the result have been different because of that failure by the defense? Yes. This should have been something where, based upon the evidence presented by the defense, there was no possible way to find actual prejudice. Can I ask you about the district court's findings about investigative delay, like what the government was doing this whole time? The district court went through the timeline and explained what the government was doing at each step throughout the process. And it looked to me like there was no period of time that the district court found the government was not actively in good faith investigating. I mean, she accounted for every time period, and she found that the government was in good faith investigating this case throughout. Why isn't that factual finding dispositive? I mean, I know we have to deal with prejudice first, maybe, before we even get to this question. But I didn't understand how the court could conclude there was a due process violation if she had concluded that the government was in good faith investigating these crimes the whole time. I agree, Your Honor. I think that is a critical issue. I think even if we don't touch the prejudice prong, if we just look at what would the ultimate question have been, her findings of fact were that up until a month before the indictment was returned, the government was doing interviews. There was no time period that was similar to what the court found in Howell, which was where the government essentially said, yeah, there's actual prejudice, and it was just pure negligence. We were just sitting on our hands doing nothing. That is not what we have here at all, and this is such a drastic remedy that this is not something where the district court is permitted to go back and say, well, you were investigating, but it wasn't really the best investigation you could have been doing. I would have done it differently. I would have done it faster. You could have put more resources into reviewing these hundreds of thousands of pages of documents. We could have done it faster if we had three more agents reviewing that, but that's not what Duke was. I think ultimately the district court did say that there's no improper motive on the part of the government, but then here's where that deference business comes in, if it exists at all. I mean, it's one thing for us appellate judges to look and say, well, you went through it and had no improper motive. Of course, we all do that, but a trial judge is seasoned and knows what a government is supposed to do and says, well, characterize this. It looks like it's a pretty weak case anyway, and what's taking so long, six years to do this? That's a question. I mean, there's no efficiency element in this thing, but there is a question of that trial judge knows what's going on here. They are the ones who deal with those investigative questions. We are just looking at it and kind of, you said it took time to investigate and do all that's there. I'm not sure how this case is going to turn out ultimately, because there are still questions in terms of whether or not this is a state-type situation or not, for which they maintain those witnesses could be for, and it would be interesting if you do prevail here, whether you will prevail in this trial here. Because I think this is a difficult case. Maybe you see it differently, but that was the trial judge's reasoning. What I read was that she looked at it and says, you don't need that time. I mean, no improper motive, but can you just stay forever and ever? If you stay 20 years and there's no improper motive, do you just stay? I mean, it seems like there would be some limitation over the time period in the minds of a trial judge that's been there. And we're not talking 18 months is one case, six years. That's a long time. But for which things did happen, whether those witnesses could have been available or could have, I'll tell you what, they're not available now. Both of them are dead. And that was what she knew. Regardless of whatever they would have said, whether or not they had taken the Fifth Amendment or whatever, they're gone now. And that has happened as well, delayed. And I'm not sure how it would have affected anyway, because one of them died pretty quickly anyway. So I'm not sure the six years affected that. But anyway, I just want to be clear in terms of where she went with it. Judge Wynn brought up that there has to be a limitation. What branch of our government sets the limitation? I notice I'm out of time. May I respond to the questions? Congress has set the limitation based on the statute of limitations. That's what ultimately. So we couldn't have investigated for 20 years. And are you within the statute of limitations? Has there been any argument that you're not within the statute of limitations? There may have been. There's been a lot of argument. And I'm not the trial attorney, but I think we are within the statute of limitations. I know we have precedent, and we have to follow our precedent, and we will. But I was a little confused by the state of the law on this, that if Congress sets a statute of limitations, that's the sense of the community about what's fair. The Due Process Clause adds the limitation that the government can't be taking an improper advantage, that they're just delaying, hoping that one of your witnesses will die for no reason. But I couldn't find where we get this standard that judges can then hop in and say, well, Congress said you have five years, but we think you should have done it faster. And therefore, we're imposing our own set of limitations on this. You know, I guess that's why it's a very high standard in our precedent. We said, you know, it's obviously we have only, I think, one case going the other way. It's a very high standard to me, and maybe that's the reason. But I was a little perplexed by where that came from in the case law. Yeah, and the Supreme Court has said this is a very narrow exception, and I think it is essentially to address situations that are pretty egregious. And that's why bad faith plays such a big role, not in this circuit as being a burden for the defense. But it is a huge factor still in how you decide that balancing test. And that is why it is rarely used. In the case in this circuit where they found that there was a due process violation in Howell, that was pretty egregious conduct by the government to in no way say that they were investigating. They simply said it was more convenient for us to wait, probably a little negligent that we didn't get there, and they conceded actual prejudice. That is not the situation we have here based upon the court's specific factual findings. I take Judge Rushing's point to being like we don't tend to think of the judiciary as like being supervisors of the executive's negligence, right? I mean, that's an unusual scenario where we're saying, as Judge Wynn suggested, we got a trial judge who says you just didn't need that much time. You could have done that quicker, right? I mean, that's what the district court said here. You didn't need that much time. That's an unusual, from a separation of powers perspective, that's a really remarkable statement from this trial judge. I agree, Your Honor, and I think that's why courts have said repeatedly investigative delay that is not done in bad faith is not a due process violation. And based on the factual findings, the entire time frame involved good faith, or at least not bad faith, investigative delay. And therefore, it cannot be a due process violation. All right. Thank you very much. We'll hear from opposing counsel here. May it please the court. Counsel, good morning, Your Honors. R.J. Zaid on behalf of Mr. Samba-Sivan. With me at counsel table is Mr. Stalings, who represents Mr. Minkin. I'm going to take ten minutes to discuss the actual prejudice prong. To begin with, Your Honor, the standard of review is factual findings are for clear error. That is unequivocal. If you look at the Burns case, 990, that's second. Well, it's a finding for prejudice. The one for prejudice is what we're concerned about. Is that clear error or is it de novo? The factual findings that lead to the actual prejudice are based on clear error. You have to find that she erred. But you agree that the finding of actual substantial prejudice is reviewed de novo. The facts that lead to that are clear error. But the actual legal conclusion that there was actual substantial prejudice, that's a legal conclusion, and that's reviewed de novo. Well, I would disagree with that, Your Honor, because what she found very quickly is there's two witnesses. Before we get to the specific facts here, there are two possible ways to go. You could say that we review the facts and the law for clear error. That's one argument. Or you can say the facts are for clear error, but the legal conclusion of prejudice is reviewed de novo. I think it's more of a mixed question of law and fact. You cannot separate them completely because in order to make the actual prejudice argument, the judge had to find what would have this witness have said, what would have done that. So I agree with that, but that's just avoiding the question, right? So I agree the factual predicates are reviewed for clear error. There's no doubt about that. But the ultimate legal conclusion is reviewed de novo, accepting the facts as found by the district court. Accepting the facts as found by the district court and the district court saying this is how it would affect the trial. That's a factual finding. I understand that's a factual finding, but whether that amounts to actual and substantial prejudice is a legal question. That's correct. But I would say that you have to accept her findings of fact. Or find them to be clearly erroneous. Exactly. And in order to be clearly erroneous, you've got to be firmly convinced that the district court judge got it wrong. Now, with respect to statute of limitations, the Supreme Court is clear in Marion and Lovasco that the due process right is a standalone. It doesn't matter if the statute of limitations. There is a due process right notwithstanding the statute of limitations. So there could be a due process violations within the statute of limitations. And factually, this case is outside the statute of limitations. The reason that we didn't bring it is because it's a factual question. There's going to be a motion if we go back to trial on Rule 29. Hasn't the Supreme Court also said that to prosecute a defendant following investigative delay is not a due process violation, full stop? No. What the Supreme Court has said on that stuff is that it has to be a good faith delay. The court did not find in this case that there was a good faith delay. I'm sorry, just to be clear, she's actually quoting, right? Held to prosecute a defendant following investigative delay does not deprive him of due process, end quote. But that's in context when she's talking about investigative delay. In this circuit, that delay has to be justified. That's the Supreme Court. The Supreme Court's told us that, right? The question is why are we ignoring the Supreme Court's direction there? No, we're not ignoring the Supreme Court direction there because if you take a look at automated medical labs, the court there looked into it. Even going back to how the court there said that the investigation, a good faith investigation delay, you don't look behind it. But when it's not a good faith investigation delay or something less than that, in this case, the court found that the delay was unjustified. And the unjustified finding has to be a clear error analysis. In your view, even assuming that you want to read those words into the Supreme Court's test, your view is that unjustified and bad faith are the same thing. They're like if the trial judge here says you just could have, you know, as Judge Wynn indicated, you didn't need that much time. Right. So is unjustified. Right. My daughter sits down to do her math homework. She's there for an hour and I just decide, you know, you should be smarter than that. You should take less time to do it. Your delay here taking an hour to do is unjustified. I wouldn't say she's acting in bad faith, like she just might be struggling with her math. Well, that's very well, but there's the presumptive for the court to say we will not look behind this at all. The court has to make finding that it's good faith. I would say there's bad faith and there's something in between. It could be like the Supreme Court said there's improper delay. And they also said recklessness. Those were concessions that were made by the government in Lovasco and Marion. It could be an improper delay for technical advantage would be one. Recklessness would be another and automated, but not when it's OK. But your view is that applies even when they're doing the investigation. And the conclusion is that you didn't need that much time. The trial judge thinks in its good judgment that you didn't need that much time to do it. That's the investigative delay. It was unwarranted because you could have done it faster. Should have assigned more agents, whatever it might be, that that can, in your view, create a due process violation. No, that's not that's not the proper analysis. What she said is not that you need more agents. It's under the circumstances of this case. This is a delicate balance that requires the court to say, OK, what are your reasons for your delay? Then the court has to bounce. I goes, what is the prejudice here? What is the prejudice here? I mean, we get to the two months before trial. I built particulars here. The judge talks about the government doesn't even know what the trade secrets are. So I two months before I didn't even know the trade secrets. It took itself out of the need for that bill in particular, but in switching to supersede. Yes. Well, they tried to get around that by saying, OK, we don't have to prove trade secrets like let's go to conspiracy. When they go to conspiracy, they still have to prove that the defendant believed that these things were trade secrets. Sounds like to me you're saying they needed to do more investigation. Like your argument seems to be that they needed to do more investigation. So maybe they brought it too quick. Your argument seems to be the opposite. Now you're saying, listen, they didn't do enough investigation. And, you know, the trial judge says they did too much investigation. And and then, you know, I'm going to be where the supervisors of the prosecutor and the FBI agent to say, you know, you didn't need that much time or you needed more time. I don't know which one is supposed to be. Not at all, your honor. The government accepted the victim's claim that this was a trade secret in 2017. They did not take a single step from 2017 to ascertain whether the victim was correct. The court drops a note and it says the government apparently didn't need to bother to look to see if what Deloitte was saying the victim was true or that they even owned the thing. They didn't do anything. That's the problem. They didn't do anything. It's not that. Why is that a delay problem? I understand you don't like what the. What the investigation did. Right. That's totally misfit. That's what defense lawyers do. Right. Like that's your totally get that's your closing argument right in front of a jury. But why does that have to do with whether the investigation here needed to be done quicker? I mean, that's what your your argument is there to you making two different arguments. One is they didn't do enough investigation. Right. And that's the argument you're making now. But that's inconsistent with your position that they didn't need as much time as they took to do the investigation. No. My position is that they were negligent in the investigation. In 2017, they knew about the witness at 2017. They didn't bother to go after the witness in 2017. They had the metadata. They had the Deloitte saying the metadata. They had the name in the metadata. And your your view is that that negligence in an investigation. Violates due process. So any anything that they should have done, the reasonable investigating officer should have done, but would not done here violates the due process calls. I'm running out of time. May I answer? Yes, please. OK, you have to your honor. It's a delicate balance. Negligent done by done by the Article three judge over the Article one prosecution. Yes, it's a delicate balance because what what this Supreme Court said and what this court has said, it's a delicate balance. You look at the prejudice, right? You look at the prejudice and you compare it to the reasons for the delay. And then you say to yourself, OK, given what happened, given the lost evidence, given what the government's proof is going to be, and given the reasons behind it, is it fair for the trial to continue on these cases? So you can't look at negligence in isolation. The negligence has to be viewed in the context of how that negligence led or caused evidence to be lost. And the evidence that was lost was a key and went to the heart of the government's case. And it was a complete. Let's hear from your co-counsel unless you want to use part of his time. Thank you, your honors. May it please the court. Let me start with this missing witness issue, if I may. Both Bert Peterson and Phil Tackett were cited by the district court as being highly relevant and highly probe probative for a very specific reason. Both of these witnesses, the district court found, as a matter of fact, would have testified as to their personal belief that the alleged intellectual property did not belong to Deloitte, but rather belonged to the states. You mean could have testified? Well, what she found specifically was that they made those statements. Now, it's a great question. I don't know if they would have taken the Fifth Amendment. They're probably going to be indicted themselves. You don't know how that would go. I mean, that's one point on it. But let me ask you the alternate question, the question on the alternate ways of proving it. Is there no other way for you to bring that proof to bear in this case? The answer is no. There is no other way, and it's based on the specific factual findings of the district court that their testimony would have been their own personal belief that these were not trade secrets. Is there any type of sanctionable conduct for the delay beyond dismissal of the charges where you have the interviews of these individuals and you have the statements they've made that you would be allowed to admit those at the trial? Not evidentiarily that I'm aware of, Your Honor. I don't think those statements come in. I'm not saying you could do it, but just not in terms of the evidential rules, but because short of dismissing the charges, the court has the authority to exact certain curative measures. If you think prejudice arose, and that's the only way I could see it, they made the statements. They're there. There's no need to take the Fifth now. Both are dead. Well, I'm struggling to come up with a good remedy that actually would solve the problem other than dismissal of the charges that require that testimony. The judge found these testimonies would have gone to the heart of the government's case, the heart, the intent of our clients. Allegedly, Tackett and Peterson would have testified just like our clients. To have to prove that those secrets are not ones that belong to the state? Is that part of their proof, or they can simply allege it belongs somewhere without even indicating that? No, no. They charged a conspiracy, so they would have had to prove beyond a reasonable doubt that our clients believed that these were Deloitte trade secrets. That's an element of their case. Both Tackett and Peterson, and by the way, the judge specifically found... I'm not sure why this matters, but why is that? Why would they have to prove that they were Deloitte's trade secrets? They had to prove that they were trade secrets. Yes, but the indictment only charges that they're Deloitte trade secrets. That's the fundamental factual basis of the indictment as set forth in the government's charges. And by the way... If they're trade secrets owned by the states, then the READ Act controls it. Is that the way this goes? I'm trying to understand... Our expert has... Sorry, Your Honor, but our expert has found that... The reason you have to show it comes from this entity here as opposed to the states is because of the READ Act. Is that right? Our experts have told us that, and we think the original indictment gets wrong the entire IP context, but that's not particularly relevant for a resolution of this appeal, I don't suggest. But keep in mind, too, that Philip Tackett would not have asserted the Fifth. The judge specifically found that he was not identified as a co-conspirator. He was not identified as potentially even asserting the Fifth. That's in her opinion. So, Mr. Tackett, who the judge described and found, was perhaps even more probative and more relevant than Mr. Burnt Peterson. The timing is also important. Tackett and Peterson were first identified by the government as being relevant back in 2017, but neither was interviewed at all for years later. So, Peterson is identified in 2017. He's not interviewed until 2020. Tackett, not until 2019. And what happens in that intervening period? Well, the states lose their documents. Both Tackett and Peterson... What documents did the states lose? Well, among others, in Massachusetts, there was actually a signed appendix, signed by Mr. Minkin and my client and his co-defendant, which recognized that this was state property, not Deloitte property. Is that document without their signatures available somewhere else? Yes, but it doesn't prove the same thing because, again, the issue is... Can they testify that they signed it? It doesn't prove it. Well, first, there's a few reasons for this, Your Honor. Number one... I'm sorry, say that again. It didn't prove it? What I'm saying is... It's not evidence that it was signed? Their signatures on these documents is different than an unsigned version for two really important reasons. Number one, even if they were to take a stand and testify, which, by the way, they wouldn't have to if the signed document comes into evidence. I thought the evidence was that everyone who worked on this had this agreement and signed it. Every single person who worked on one of these projects signed this agreement, is what you said. So it seems to me that this agreement is probably available somewhere and that no one would dispute that your client signed it. Well, it's not available, but also... But the district court didn't talk about that. Well, it did talk about the importance of the specific signature as opposed to just the blank document. Well, that might be more persuasive, right? It's more persuasive to put a signature up on an Elmo, maybe, than to have someone testify, yes, they signed it. But that's not the question when we're talking about actual substantial prejudice. But these are precisely why these kind of determinations are properly left to the district court. But, yeah, my point is she didn't talk about that. Well, she did, though. No, she said that the signed agreement would be very probative. She didn't talk about whether this agreement is available from anywhere else or whether the evidence that your client signed it is available from anywhere else. I think she found that the signed version was unavailable and that the signature itself on the document was relevant. Were there any other documents you identified that were destroyed? The Minnesota materials that relate to who owned Deloitte's property or the state's property after the completion of the project. What are those materials? What are the documents that were destroyed? What would they show? Well, what we argued to the district court and what she found were that these documents related to the structure between Deloitte and Minnesota, how that was documented, and what kinds of intellectual property rights were reserved to the state. Did Minnesota say they had witnesses who could talk about that? Yes, but those are not the documents. But you don't know that no one identified any documents. You identified this one IP vendor agreement. You didn't identify any other documents. And Minnesota actually said, we have witnesses who can talk about this. But then the district court didn't address that. Well, I think the district court did address that Minnesota had relevant documents and described why they would have been relevant and also the timeline of their disclosure. And in those respects, she was making findings of fact, not conclusions of law. And to that point, Your Honors, I'll ask some interesting questions about her findings about good faith and what that means in the terms of prosecutorial delay. That's really the ultimate question in this case. Everything we just talked about might be interesting, but the direction that seems to be the difficulty you may have is dealing with that question. Even if we say that pre-indictment delay caused some actual substantial prejudice, you still have a hurdle to come because those charges can't be dismissed unless the prosecutor violated those concepts of fundamental justice. And the basis of saying, as you've heard Judge Richardson go at it quite strongly, of just saying, well, you had enough time. That's not going to cut it, at least in terms of the law. So how do you address that? Several ways, Your Honor. Number one, it's important to know what the court found and did not find on good faith. The court did not find that the investigative delay was in good faith. It did not find that. What the court found was there is not sufficient evidence to establish that the United States had an improper motive. So now we come back to, is there something, and to Judge Richardson's question and Judge Rushing's question. So the court found there was no evidence of bad faith. Yes. Insufficient evidence of bad faith. Bad faith had not been established. It does not establish that the delay was good faith. And that's the important point. Because Lovasco and the Supreme Court cases, automated and Howell, say that there is something, a large body of conduct, in between good faith investigative delay and bad faith. In Lovasco, note 17, the government itself. I'm sorry, say that one more time. Yes, Your Honor. There's a gap between good faith and bad faith? There is a wide range of government conduct between true good faith investigative delay and bad faith. A wide gap. And the cases talk about it. Lovasco in particular, the government concedes, in note 17, this is in the opinion by the Supreme Court, the government concedes that reckless disregard that results in foreseeable problems, lost evidence, et cetera, can be a basis for a due process violation. That's not bad faith. Howell, and many other cases, and Howell, as the government concedes, the delay was allegedly the result of convenience, but also the court references negligence in the investigation. But here, the district court walked through every year between when the government found out about this conduct and the indictment, and the court identified what the government was doing at every year. And she identified the investigation that was going on at every point, and then her conclusion was there was a year, or like a little less than a year where they said they had to go through lots of e-mails, and I don't think it should have taken that long. Your Honor, I would respect. That's the year that Sagitek was doing their internal investigation, I think. I would respectfully, and I see my time is up. May I answer the question? Yes. I respectfully disagree on that point, and to Judge Richardson's point as well on this issue, because the court was not substituting her own judgment for the prosecutorial decision on how fast to move. Instead, what the judge did was break down some very important gaps in time that resulted in lost evidence. And let me just point out a few of those, which the court pointed out in her opinion. In 2017, they identify Peterson and Tackett as relevant witnesses, and then years go by before they interview them. So the period, I think, Judge Winn, you pointed out, there was a short period between Peterson's interview and his death. But there was a very long, multi-year period between the identification of Peterson as a key witness and his death. What if they never interviewed him? Well, it's a good question. I mean, what's the constitutional standard for when they have to interview him? The government could have chosen never to interview him. Agreed. It would have been even more negligent of the government not to do that, however. And this goes to the point about, do we want it both ways? Are we saying the government should have investigated more, but they didn't investigate enough? No. We're saying that the government's case was ill-founded, and the main reason we're going to have difficulty winning the acquittal is because of their delay. Now, is that something that we're supposed to be deciding on, a question of due process, pre-indictment delay, how well-founded the indictment was? Well, I would suggest that it's what the district court did decide by making detailed findings of fact to support both prongs. And to answer the very first question, both prongs are intensive fact-intensive findings. The conclusion about whether or not her findings resulted in a due process violation perhaps is legal, but they all ultimately depend upon those detailed factual findings. I very much appreciate your time. Thank you very much for your argument. Ms. Herrick, you have a few minutes in rebuttal if you choose. Thank you, Your Honor. And I'd like to start with Judge Rushing's point about the detailed factual findings here. The court found that in 2020, there was actually momentum gained in the investigation. From December 19, a year or so thereafter, she specifically found that the investigation was ramping up. And 2020 is when both of those witnesses died. So it was not just during an investigative stage, it was during the most active in the court's findings stage that these witnesses died. In terms of timing as to when they were interviewed, again, that's the government's decision. But particularly for Peterson as a target, it would be a frankly terrible decision to go interview your targets before you've done an investigation. You interview your targets at the end. Maybe that's not always true, right? I mean, we often do knock and talks, right? Like that's a common practice in law enforcement. Sometimes you want to go talk to the target first, right, before they figure out that there's an investigation going on. Sometimes we don't. I mean, I get that there's like, it's not a terrible decision, right? You can't say that. I actually do knock and talks all the time in my cases. So I take that point. But in this particular case... I mean, that point doesn't matter to your point, but just don't overreach. Fair enough, Your Honor. And I think the point about there being this middle ground between good and bad faith, there's no allegation that there was negligence in this investigation. And the fact that the court, it was a more tepid finding of not bad faith versus an enthusiastic endorsement of good faith, that doesn't change the fact that there was no finding of bad faith. The footnote 17 in Lovasco, your colleague referred to, doesn't find that recklessness would suffice. It just leaves that question open, right? Because it says at the end of that, there's no evidence of recklessness here, so we need not address the government's concession that recklessness might suffice. That is correct, Your Honor. So this court is not bound by any finding that recklessness can support this. And essentially, the argument that is ultimately being proffered by the other side is that this is a weak case. And I think it's a very good point that if the court thinks it's a weak case and defense thinks it's a good case, or a weak case, perhaps we should have investigated further. This was a good faith investigation. You always are trying to look for that smoking gun. And they pointed out that they actually found what they believed to be a very significant email that led to more production discovery in, I believe, late 2020. My timeline might be a little off, but it was 2020 or 2021. So when you're reviewing all this, sometimes it takes a little while. And it would be a terrible idea to push prosecutors to indict or risk dismissal if they don't do it fast enough, if they haven't taken the time to make sure, to allow them to do an internal investigation, to thoroughly interview a number of witnesses, which, again, we were also dealing with a pandemic during this, and witness interviews were a challenge in 2020. So there is no finding of bad faith. This was entirely investigation. And we would ask that the district court's opinion be vacated. All right. Thank both counsel for your able argument. The court is going to adjourn for this session, and then we'll come down and greet counsel as is our tradition. This honorable court stands adjourned. God save the United States and this honorable court.
judges: James Andrew Wynn, Julius N. Richardson, Allison J. Rushing